NOT DESIGNATED FOR PUBLICATION

No. 117,277

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of

VALDIE T. BARNETT.

MEMORANDUM OPINION

Appeal from Ellsworth District Court; RON SVATY, judge. Opinion filed November 17, 2017. Reversed and remanded with directions.

*Dwight R. Carswell*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellant State of Kansas.

*Robert A. Anderson, Sr.*, of Counsel, of Law Office of Donald E. Anderson II, LLC, of Ellinwood, for appellee Valdie T. Barnett.

Before ATCHESON, P.J., BUSER, J., and BURGESS, S.J.

PER CURIAM: In 2005, Valdie T. Barnett was convicted of two sexually violent offenses, attempted indecent liberties with a child and indecent solicitation of a child. In 2012, the State filed a petition to have Barnett evaluated and tried under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 59-29a01 et seq. After hearing testimony from three professionals who performed evaluations on Barnett, the district court found that Barnett was a sexually violent predator and ordered him civilly committed. Barnett appealed. We reversed because we found that the State failed to follow the procedure in K.S.A. 2015 Supp. 59-29a05(d) which requires the State to provide the respondent a forensic evaluation by a professional deemed qualified to

1

perform such evaluations. *In re Care & Treatment of Barnett*, No. 115,298, 2016 WL 5853086 (Kan. App. 2016) (unpublished opinion). We remanded for further proceedings. On remand, the district court ordered Barnett released from his civil commitment. The district court denied the State's motion to take him into custody again to conduct a new evaluation and ultimately dismissed the State's petition. The State timely appeals. We reverse and remand for proceedings in accordance with K.S.A. 2016 Supp. 59-29a05.

FACTUAL AND PROCEDURAL BACKGROUND

This is an appeal after remand. In Barnett's direct appeal from the district court's adjudication that he is a sexually violent predator (SVP) as defined in the KSVPA, we reversed the judgment and remanded for further proceedings. On remand, the district court released Barnett from his involuntary civil confinement and dismissed the State's petition against him. The State timely appealed.

In 2012, when the State began proceedings under the KSVPA, the State had Dr. Jane Kohrs, a licensed psychologist, conduct an evaluation for the purpose of diagnosing Barnett and making recommendations for further treatment. Dr. Kohrs' evaluation was contained in a clinical services report. Based on this report, the State believed it had probable cause to support a petition to have Barnett civilly committed under the KSVPA. Barnett stipulated that probable cause existed to believe he was an SVP, and the district court ordered him to be transported to Larned State Security Hospital for an evaluation by a qualified psychologist or psychiatrist pursuant to K.S.A. 2015 Supp. 59-29a05(d).

In its memorandum, the district court stated that it was not relying on the testimony of Dr. Rebecca Farr, who conducted the KSVPA forensic evaluation relied upon at trial. Dr. Farr holds a Ph.D. in psychology and at the time of Barnett's evaluation held a temporary license but had subsequently failed the professional licensing

2

examination. During the pendency of the proceeding, she again failed the licensing examination.

On appeal, we concluded that the district court found Dr. Farr was not qualified to perform a KSVPA forensic evaluation. As a result, Barnett did not receive an evaluation by a qualified professional as required by statute. The prior opinion specifically stated that there had been no determination on the merits of the case.

ANALYSIS

At the hearing on remand, the district court interpreted our reversal of the judgment as a ruling that Barnett is not an SVP. The State argued that our opinion entitled it to have a new evaluation performed by a different, qualified professional and sought to keep Barnett in custody for that purpose. The district court judge stated that it understood our opinion to require him to "let [Barnett] loose." The district court judge stated, "Frankly, I'm looking for some way to keep Mr. Barnett, because I think he is dangerous." The district court judge continued, "I don't see anything I can do but let him loose." The State made an emergency motion for automatic stay, based on K.S.A. 2016 Supp. 60-262(a), which provides that no actions can be taken to enforce a civil judgment until 14 days after entry of judgment.

The district judge denied the motion, stating that he was "extremely uncomfortable staying this and keeping Mr. Barnett in custody. I think . . . if you win, they can take him back into custody." In its order after the hearing, the district court stated:

> "The Court next finds in accordance with the Mandate issued by the Kansas
> Court of Appeals on November 7, 2016 that the respondent, Valdie T. Barnett, is not a
> Sexually Violent Predator and that the respondent Valdie T. Barnett should immediately
> be released from his involuntary civil commitment . . . upon presentation of a certified
> copy of this Order."

3

Barnett was released that same afternoon.

Because the State's petition was not dismissed by the order of release, it filed a motion to take Barnett back into custody for a new evaluation. The district court denied the motion. The State's attempt to appeal that ruling was rejected for lack of a final order. In April 2017, we issued an order remanding the case for the limited purpose of obtaining a written decision on all outstanding issues. In May 2017, the district court issued a journal entry, prepared by the State, stating: "The District Court concurs with the arguments of the Respondent and, over the objection of the State of Kansas, dismisses the State's Petition."

## DID THE DISTRICT COURT ERR IN INTERPRETING AND EXECUTING THE MANDATE FROM THIS COURT WHEN IT RELEASED BARNETT FROM CUSTODY?

*Do the principles of res judicata and law of the case apply?*

Whether the doctrine of res judicata applies in a certain case is an issue of law over which appellate courts exercise plenary review. *Cain v. Jacox*, 302 Kan. 431, 434, 354 P.3d 1196 (2015). The rules governing appellate court mandates are a subset of judicial policy regarding the law of the case and are designed to implement consistency and finality of judicial rulings. See *State v. Collier,* 263 Kan. 629, 636, 952 P.2d 1326 (1998). Where an appellate court has decided an issue by explicit language or necessary implication, a district court may not reconsider the issue. However, a district court may address on remand any issues left open by the appellate court's mandate that are necessary to the resolution of the case. *Edwards v. State*, 31 Kan. App. 2d 778, 781, 73 P.3d 772 (2003).

Barnett argues that our prior opinion contained an implicit ruling on the merits and the State is barred by res judicata, stare decisis, and the law of the case doctrine from seeking to reevaluate or retry him. Specifically, he argues that this court found—at least

4

by necessary implication—that the State failed to meet its burden of proof that Barnett is an SVP. However, his argument is specious because our prior opinion explicitly declined to address Barnett's argument that there was insufficient evidence to classify him as an SVP. *In re Care & Treatment of Barnett*, 2016 WL 5853086, at *3.

We now turn to the primary issue on appeal, whether the district court's dismissal of the State's petition and its release of Barnett was authorized by our mandate in Barnett's appeal.

*Did the district court's action comply with our mandate?*

The mandate and opinion from an appellate court "shall be controlling in the conduct of any further proceedings necessary in the district court." K.S.A. 60-2106(c). If a district court departs from a mandate, it commits error. *State v. Kleypas*, 305 Kan. 224, 297, 382 P.3d 373 (2016), *cert. denied* __ U.S. __, 137 S. Ct. 1381 (2017). Whether a district court's action complied with the mandate and the proper interpretation of a mandate are questions of law subject to de novo review. *State v. Guder*, 293 Kan. 763, 765, 267 P.3d 751 (2012).

Our prior opinion stated:  "Barnett did not [receive] the statutorily mandated evaluation, and, as a result, this case must be reversed. In view of the fact that the threshold issue of whether Barnett received the mandated evaluation necessitates reversal, this court will not address any of the other issues raised by Barnett on appeal." *In re Care & Treatment of Barnett*, 2016 WL 5853086, at *3. Our opinion concluded: "Reversed and remanded for further proceedings," and the mandate stated, "the judgment of the District Court [is] reversed and remanded."

Both parties provide string cites of examples of language used by this court when remanding cases. Barnett lists all 14 KSVPA civil commitment cases that were reversed

and remanded with instructions and argues that because this court and our Supreme Court have on occasion provided explicit instructions, the absence of specific instructions here indicates an intention that no new trial be held. He argues that "[t]he only 'further proceeding' this Court contemplated was to have the district court prepare and/or sign an order finding that Barnett was not [an SVP] and directing Larned . . . to release Barnett." There is no language in the opinion or mandate suggesting either of those actions. The "mandate rule" applied in Kansas provides that if a case is reversed without instructions to enter judgment for the appellant, the district court is to hold further proceedings. Over a century ago, our Supreme Court described the proper interpretation and implementation of an appellate court mandate on remand.

> "The practice in this court is to state specifically in the opinion and mandate the judgment or order which is to be entered by the trial court, whenever it is thought a final disposition ought to be made upon the record as it stands; and *when simply a reversal is ordered, a new hearing in the trial court is intended. Laithe v. McDonald*, 7 Kan. 266." (Emphasis added.) *Crockett v. Gray*, 31 Kan. 346, 348, 2 P. 809 (1884).

Our Supreme Court stated that judgment should be entered for the appellant upon remand "only when, upon the facts as found . . . the case is ready for a judgment which will be fully in accord with the views expressed by the appellate court." *Crockett,* 31 Kan. at 349.

Recently *Crockett* was applied in an appeal after remand in a contract case. The key issue was "what exactly this court decided when it remanded this case" in the first appeal. *Building Erection Services Co., Inc. v. Walton Construction Co., Inc.*, No. 111,706, 2015 WL 4879075, at *1 (Kan. App. 2015) (unpublished opinion). In the first appeal, this court agreed with the district court that Building Erection Services Co. (BESCO) was liable for remediation damages but reversed the district court's judgment that required BESCO to pay the full remediation costs. The case was remanded for the

district court to determine the damages that resulted from BESCO's negligent acts or omissions but did not order the district court to hold a new evidentiary hearing.

On remand, the parties disputed whether our mandate contemplated a new hearing. BESCO maintained that this court had considered the sufficiency of the evidence of damages and that "Walton's case against it was 'over'" because Walton failed to prove the damages element of its claim. BESCO argued to the district court that if it held a hearing to take new evidence on damages, it would be giving Walton an impermissible "'second bite at the apple.'" 2015 WL 4879075, at *6.

Over BESCO's objections, the district court conducted another evidentiary hearing. In the second appeal, BESCO argued that the new hearing "rewarded" Walton by allowing it the chance to "'plug the holes'" in its evidence. 2015 WL 4879075, at *12, 14. That argument was rejected because the taking of new evidence was necessary to effectuate our mandate. In the first appeal, it was "specifically declared that a determination of damages owed by BESCO *could not be made upon the trial court's original findings.*" (Emphasis added.) 2015 WL 4879075, at *15. We cited *Crockett* for the proposition that when the judgment of a district court is reversed and remanded for further proceedings, it is error for the district court to enter judgment for the prevailing appellant without making the findings necessitated by the mandate. 2015 WL 4879075, at *15. In the present case, the decision in the first appeal stated that Barnett did not receive the evaluation that is required by statute. No decision was made on the merits of the case. It is obvious that a new evaluation and the proceedings generated by that evaluation were necessary.

In a not-so-recent case, our Supreme Court applied the mandate rule and denied entry of judgment for the appellant in a case where the district court's findings of fact were contrary to the evidence. In *State v. Scott County*, 61 Kan. 390, 59 P. 1055 (1900), the State sought to recover on bonds it had purchased from Scott County. At trial, the

7

district court found that the bonds were invalid and entered judgment for Scott County. On appeal, our Supreme Court determined that some of the district court's findings of fact were contrary to the evidence and reversed and remanded for further proceedings. The State applied for an amended mandate directing that judgment be entered for the State. Our Supreme Court denied the application because, after the district court's unsupported findings of fact were set aside, "there were no findings as to those facts"—facts necessary to the State's case—and "the case was not in a condition [for the Court] to direct judgment." 61 Kan. at 393. In other words, just because the district court's conclusion that the bonds were invalid was contrary to the evidence did not mean the bonds were valid. A new hearing was required to determine validity. Similarly, the ruling in the first appeal in the present case that the district court relied on impermissible evidence to find that Barnett was an SVP did not mean that Barnett was not an SVP. A new hearing is required to make that determination.

The district court—although making an apparently good faith effort to effectuate our mandate—had no basis in law or fact to order Barnett released.

## WHAT AUTHORITY IS THERE FOR THE STATE TO REGAIN CUSTODY OF BARNETT AND CONDUCT A NEW EVALUATION?

In evaluating the constitutionality of the KSVPA, the United States Supreme Court emphasized that civil involuntary confinement is permissible only if "the confinement takes place pursuant to proper procedures and evidentiary standards." *Kansas v. Hendricks*, 521 U.S. 346, 357, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997). "This is because the liberty interest in freedom from physical restraint '"has always been at the core of the liberty protected by the Due Process Clause . . . . "' 521 U.S. at 356 (quoting *Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 [1992]); *In re Care & Treatment of Ward*, 35 Kan. App. 2d 356, 375, 131 P.3d 540 (2006).

8

*A petition is a prerequisite to obtaining a new forensic evaluation.*

Barnett argues that no new evaluation can be initiated because the State's original petition was dismissed and it cannot initiate a new petition because he is no longer in custody. Barnett makes contradictory arguments concerning the State's original petition. First, he argues that the State's ability to proceed under its original petition ended when the district court ruled that Barnett was a sexually violent predator. Barnett also argues that the State's "original petition was legally dismissed [in the first appeal] unless this Court remanded the case . . . with specific instructions for further evidentiary proceedings or a new trial." The case was, in fact, remanded for further proceedings, which contemplated a new evaluation and possibly a new trial. Thus, under Barnett's own logic, the State may proceed on its original petition, which was filed in accordance with K.S.A. 2011 Supp. 59-29a04 while Barnett was in prison.

Barnett argues that the State cannot file a new petition because the KSVPA provides for the commitment process to be initiated before the offender is released from prison. K.S.A. 2016 Supp. 59-29a03(a). He argues that because he has completed his prison sentence and received his discharge for completion of parole, he is no longer subject to evaluation.

Barnett cites *In re Care & Treatment of Sporn*, 289 Kan. 681, 684-85, 215 P.3d 615 (2009), for the proposition that the KSVPA allows only one commitment proceeding during the period an offender is serving his or her "'complete sentence,'" which would include parole and postrelease supervision. The State first brought an SVP petition in 2005 when Sporn's release from prison was imminent. The jury in the commitment trial found in Sporn's favor, and he was released. In 2007, when Sporn violated terms of his postrelease supervision and was returned to prison, the State filed a petition to initiate SVP proceedings again. Our Supreme Court concluded that there is not a hard and fast rule prohibiting another petition, but it affirmed the dismissal of the petition as successive

9

because the State did not demonstrate that Sporn's mental status had changed between his favorable jury verdict and the 2007 proceeding. *In re Care & Treatment of Sporn*, 289 Kan. 687-89.

The crucial difference in this case is that the State is not attempting a second commitment proceeding. The State is asking to proceed on its original petition. The dismissal of the petition was based on an invalid order which was based on an inaccurate interpretation of the mandate in the first appeal. The objective of a remand is to put the parties in the same position they were in prior to the trial. There is no need to file a second petition.

*Can Barnett be returned to custody?*

There is no known precedent that specifically directs whether Barnett can be returned to custody. An appellate court has inherent authority to enforce its mandates. In the present case, the district court erred in releasing Barnett and that error can be corrected.

Barnett argues that he cannot be returned to custody because there is no statutory authority to jail a party in a civil case. He provides no citation for this assertion, and the KSVPA itself provides for a respondent to be held in jail prior to trial and after a mistrial. K.S.A. 2016 Supp. 59-29a05(a); K.S.A. 2016 Supp. 59-29a07(f).

Another portion of the KSVPA should be considered as well. Once a petition is filed against a person in custody, that person cannot be released until the proceeding is completed. K.S.A. 59-29a20 provides that "[a]ny person for whom a petition pursuant to this act has been filed and is in the secure confinement of the state shall not be eligible for bail, bond, house arrest or any other measures releasing the person from the physical protective custody of the state." Barnett was in custody when the petition was filed and,

10

obviously, remained in custody during the trial and his appeal. Upon our decision in his appeal, he should have been held in custody awaiting a new evaluation and if merited a new trial. Barnett's release was in error because it was based on an invalid order. The prior opinion did *not* find that Barnett was not an SVP or in any other way make a determination on the merits of the case. This error can be corrected.

*Do further proceedings pursuant to K.S.A. 59-29a01 et seq. result in an impermissible second bite of the apple?*

Barnett argues that because the State's evaluation was not performed by a qualified professional, the State failed to meet its burden of proof. He argues allowing the State to designate a new professional and reevaluate him would impermissibly give the State a second bite at the apple. This argument is unavailing for three reasons. First, it is based on the mistaken assertion that the sufficiency of the evidence was tested on appeal. Second, double jeopardy does not bar a second proceeding because this is a civil, not criminal, proceeding. Third, the KSVPA provides for a new trial upon the declaration of a mistrial, and caselaw provides for a new trial where a trial error has occurred depriving the respondent of a fair trial.

The first opinion in this case found that a procedural error vitiated the judgment. Barnett was deprived of a fair trial because he was not afforded the protection provided by K.S.A. 2016 Supp. 59-29a05, which provides that a person can be committed only if a qualified professional conducted the forensic evaluation establishing that the person met the criteria as an SVP. While there is no caselaw with facts similar to this case, new trials have been granted for reasons including prosecutorial error and improper testimony by the evaluating psychologist.

In *In re Care & Treatment of Ward*, a third trial was ordered after the first trial ended in a hung jury and the State committed prosecutorial error in its closing argument

11

in the second trial. It was determined that the closing argument was "obviously planned with an impermissible theme running throughout . . . specifically designed to play upon . . . the jurors' fears as parents." 35 Kan. App. 2d at 379. Even in light of apparently intentional prosecutorial error, the State was granted a second chance.

The Kansas Supreme Court remanded an SVP case for a new trial after finding that the psychologist's testimony was improper and deprived the respondent of a fair trial. *In re Care & Treatment of Foster*, 280 Kan. 845, 127 P.3d 277 (2006). The psychologist who performed the forensic evaluation testified about the several levels of evaluation and review that occur prior to an SVP commitment trial. Our Supreme Court found this type of evidence "'stack[ed] the deck'" against the respondent. 280 Kan. at 857. Two years later, this court applied *Foster* and found the respondent had been denied a fair trial where the State introduced the same type of testimony prohibited by *Foster*—from the same expert. *In re Care and Treatment of Franklin*, No. 97,650, 2008 WL 2051733, at *3 (Kan. App. 2008) (unpublished opinion). Even though the State's action was one that was clearly identified as reversible error by our Supreme Court two years earlier, a new trial was granted. 2008 WL 2051733, at *5.

*Is the State procedurally prohibited from proceeding?*

Barnett argues that the State should have challenged this court's opinion before the mandate issued, either by petitioning this court to reconsider its decision under Kansas Supreme Court Rule 7.05 (2017 Kan. S. Ct. R. 50) or by filing a petition for review with the Kansas Supreme Court under Kansas Supreme Court Rule 8.03(a) (2017 Kan. S. Ct. R. 53). This argument presupposes that the opinion was a decision on the merits which it explicitly stated it was not.

Barnett also argues, in passing, that the State's arguments made for the first time at the hearing on remand should have been made to this court in the State's brief in Barnett's

appeal. He does not identify what arguments the State did or did not make in the first appeal, and the issue of interpretation of a mandate was clearly not present in the first appeal. With no citation to fact or law, Barnett has waived this argument. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013) (a point raised incidentally in a brief and not argued therein is deemed abandoned).

Barnett argues that if we adopt the State's arguments "and [reverse] this Court's original memorandum opinion," we should address the other issues he raised in his direct appeal. The invitation is noted but rejected. This opinion enforces, not reverses, the original appeal.

IS THE STATE'S APPEAL FRIVOLOUS, ENTITLING BARNETT TO ATTORNEY FEES?

Barnett originally raised this issue in his brief but then followed the proper procedure of filing a separate motion for attorney fees. He seeks sanctions against the State Attorney General's Office for continuing the proceedings after Barnett was released and an award of attorney fees to Ellsworth County, which is the agency responsible for payment of Barnett's court-appointed attorneys. Barnett argues that the State's appeal was frivolous because it did not raise a legitimate and unsettled question of statutory interpretation. Given the resolution of the appeal, this motion is denied as moot.

To make it perfectly clear, this case is reversed and remanded for further proceedings. The district court's orders finding Barnett not to be an SVP and dismissing the case are invalid, and any actions taken as a result of those orders are null and void. The State may proceed to have Barnett evaluated as contemplated by K.S.A. 2016 Supp. 59-29a05 and, thereafter, to purse any proceedings as outlined by statute. Barnett shall surrender to the Ellsworth County sheriff within 30 days after the filing of this opinion with the Clerk of the Appellate Courts. He shall be detained subject to any further orders of the district court concerning the details of his confinement pending a new evaluation

13

and any further proceedings. Failure by Barnett to surrender himself as directed may be enforced by contempt of court proceedings.

Reversed and remanded with directions.